## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DIVINE SERENITY SHOP, INC.,
and MADE WITH LASER, LLC d/b/a
Apartment Botanist,

     Plaintiffs,

v.                                        Case No. 8:24-cv-2081-WFJ-LSG

PLANT IDENTIFICATION INC., d/b/a
Palmstreet f/k/a Plantstory; CHEN LI;
DANIELLE CICCOLI; KATHY BANEGAS
d/b/a The Healing Gem, BREANNA PALACIOZ
d/b/a Crystal Vibrations; and XIAOHONG
HOLLY SONG d/b/a The Crystal Tabby,

     Defendants.

_____/

## ORDER

Before the Court is Defendants Plant Identification Inc. d/b/a Palmstreet,

f/k/a Plantstory ("Palmstreet"), Chen Li, and Danielle Ciccoli's motion to dismiss

based on *forum non conveniens* and personal jurisdiction (Dkt. 18), Plaintiffs'

response (Dkt. 27), and the reply (Dkt. 31).  After careful consideration of the

allegations of the complaint and the submissions of the parties, the Court concludes

the motion is due to be granted.

## BACKGROUND

Plaintiffs and Defendants market and sell crystals, gems, jewelry, plants, and

other healing and metaphysical products.  Plaintiff Divine Serenity Shop, Inc.

("Divine Serenity") is a Florida corporation and conducts business in Florida. Dkt.

1 ¶ 5. According to the complaint, Divine Serenity is "located in Hillsborough

County, Florida." Dkt. 1 ¶ 5. Florida's official business entity records show that

Divine Serenity's principal place of business is Miami, Florida, which is located in

Dade County.[1] Plaintiff Made with Laser, LLC d/b/a Apartment Botanist

("Apartment Botanist") is a New Jersey limited liability corporation.[2] Dkt. 1 ¶ 6.

Defendant Plant Identification Inc. d/b/a Palmstreet f/k/a Plantstory

("Palmstreet") is a Delaware corporation "registered as a California corporation,

located in California."[3] Dkt. 1 ¶ 7. Defendant Chen Li is domiciled in California

and is the "Founder, Owner, President and CEO" of Palmstreet.[4] Dkt. 1 ¶ 8.

Defendant Danielle Ciccoli is a citizen of Ohio and works for Palmstreet. Dkt. 1 ¶

9. Defendants Breanna Palacioz d/b/a Crystal Vibrations, Xiaohonh Holly Song

d/b/a The Crystal Tabby, and Kathy Banegas d/b/a The Healing Gem are all

domiciled in California.[5] Dkt. 1 ¶¶ 10–12. Despite none of the Defendants

---

[1] *See* https://dos.fl.gov/sunbiz/ (last visited May 5, 2025). The "sunbiz" records also show that the "officer/director" as well as registered agent is Teresa Martinez, with the same corporate address in Miami.
[2] *See* https://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName (last visited May 5, 2025).
[3] *See* https://bizfileonline.sos.ca.gov/search/business (last visited May 5, 2025). Defendant Chen Li is listed as its agent on the California Secretary of State corporate statement of information.
[4] Although Chen Li is named as a defendant, none of the counts seek relief against him.
[5] Kathy Banegas operates her small business—The Healing Gem—as a registered fictitious business name in Los Angeles County, California. *See* https://apps.lavote.gov/#/onlinesearch (last visited May 5, 2025).

residing or registered to do business in Florida, Plaintiffs allege that all six Defendants conduct business in Florida.  Dkt. 1 ¶¶ 7–12.

Plaintiffs and Defendants sell on Palmstreet—a shopping (ecommerce) platform and application or "app"—that specializes in facilitating the sale of plants, crafts, and crystals.  Dkt. 1 ¶¶ 7, 13.  Palmstreet offers its shoppers a unique shopping experience, with live sales where buyers can interact directly with sellers. Dkt. 1 ¶ 13.  Live streaming presentations on Palmstreet are conducted in a warehouse located in Azusa, California.  Dkt. 1 ¶ 18.  The sellers using Palmstreet enjoy a "streamlined" experience with "low fees, flexible selling methods, and a dedicated seller hub to grow business."  Dkt. 1 ¶ 13.

Plaintiffs Apartment Botanist, formed by Alessia Resta, was allegedly "the first crystal seller" on Palmstreet starting in 2023.  Dkt. 1 ¶¶ 19, 20, 35.  Divine Serenity, owned by Teresa Martinez, was allegedly "one of the first three crystal sellers" on Palmstreet beginning in 2024.  Dkt. 1 ¶¶ 47, 48.  Plaintiffs lost revenue in 2024, allegedly through the fault of the defendants.  According to the complaint, Palmstreet, Ms. Ciccoli, and Mr. Li worked closely with Plaintiffs, gained Plaintiff's trust, and wrongfully disclosed Plaintiffs' proprietary marketing strategies, customer acquisition plans, product sourcing methods, and other confidential business information with other sellers who also used Palmstreet.  Dkt. 1 ¶¶ 19–84.

Count I is directed solely against Palmstreet for breach of an implied contract. Dkt. 1 ¶¶ 130–136. Plaintiffs allege Palmstreet failed to safeguard Plaintiffs' proprietary business strategies, customer information, and confidential marketing plans by sharing same with Defendant "straw" sellers. Dkt 1 ¶ 133. According to the complaint, Palmstreet unlawfully permitted the wholesale straw sellers, such as Kathy Banegas d/b/a The Healing Gem, to operate on the live shopping platform without proper adherence to Palmstreet rules, which in turn allowed unfair competition with Apartment Botanist and Divine Serenity.[6] Dkt 1 ¶ 133. Plaintiffs' business growth was undercut, and revenue suffered in total about $750,000 in 2024. Based on these same allegations, Count VI claims that Palmstreet and its Business Development Director, Danielle Ciccoli, breached fiduciary duties owed to Plaintiffs as their trusted business partners and advisors. Dkt. 1 ¶¶ 193–198.

Other claims against these three Defendants as well as the others include tortious interference, defamation, civil conspiracy, unjust enrichment, and violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), together with violations of the Lanham Act, 15 U.S.C. § 1125(A) and the Sherman

---

[6] The platform community guidelines "prevent unfair competition between wholesale crystal sellers and resale sellers" and "ensure that smaller resale sellers can compete fairly without being overshadowed by larger wholesale operations." Dkt. 1 ¶¶ 14, 15; Dkt. 1-2 at 1–12.

Antitrust Act, 15 U.S.C. § 1 *et seq*. Count II alleges that Palmstreet and the straw

sellers tortiously interfered with business relations by using confidential

information provided by Palmstreet to replicate Plaintiffs' business models, offer

competing products at lower prices, disparage Plaintiffs' products, and falsely

claim that Plaintiffs' products were overpriced and inferior, as well as soliciting

Plaintiffs' customers by targeted marketing and promotions, and misappropriating

Plaintiffs' business strategies. Dkt. 1 ¶ 144.

Count III alleges that all Defendants made false and defamatory statements

about the quality, pricing, and authenticity of the products sold by Plaintiffs on the

Palmstreet live shopping platform. Dkt. 1 ¶ 153. Count IV alleges that all

Defendants conspired to coordinate a campaign to defame Plaintiffs by spreading

false and misleading statements about the quality and pricing of Plaintiffs' products

on social media and Palmstreet. Dkt. 1 ¶ 170.

Count V alleges violations of Section 43(a) of the Lanham Act by engaging

in false designation of origin by selling products deliberately designed to mimic

branding, intending to create consumer confusion, and causing harm to Plaintiffs'

businesses through unfair competition. Dkt. 1 ¶¶ 178, 180, 181. Count VII asserts

that all Defendants combined or conspired to restrain trade in the market for

crystals and spiritual products sold on Palmstreet in violation of the Sherman

Antitrust Act. Dkt. 1 ¶¶ 200–202. Count VIII claims unjust enrichment and seeks

restitution in the amount of lost revenue.  Dkt. 1 ¶¶ 212–218.  Count IX alleges a

violation of FDUTPA for false advertising, unfair competition, and deceptive

business practices.  Dkt. 1 ¶¶ 220–227.

Attached to the complaint are Palmstreet's community guidelines while

participating in live streams on the Palmstreet app (Dkt. 1-2 at 1–12) and

Palmstreet's "Terms and Conditions" referred to as the "Agreement" or "Terms"

(Dkt. 1-2 at 13–25).  By using or accessing the Palmstreet platform, or the

Platform, sellers "consent to th[e] Agreement."  Dkt. 1-2 at 13.  The Agreement

controls the sellers' "use of the Platform and use of the plant content and

marketplace services facilitated by the Platform."  Dkt. 1-2 at 13.

The Agreement also provides that "[b]y accessing or using the Platform, you

agree that you have read, understood and accept all of the terms and conditions

contained in this Agreement . . . ."  Dkt. 1-2 at 14.  The Agreement contains an

arbitration clause as well as a forum selection clause.  Dkt. 1-2 at 22–23.  The

forum selection clause states in pertinent part:

> **Governing Law and Venue**
>
> This Agreement shall be governed by and construed and enforced in
> accordance with the laws of the State of California, . . . Except as
> provided in the "Dispute Resolution" section, all claims arising out of
> or relating to these Terms will be brought exclusively in the federal or
> state courts of San Jose, California.

Dkt. 1-2 at 22.

Defendants Palmstreet, Ms. Ciccoli, and Mr. Li seek dismissal based on a forum selection clause and lack of personal jurisdiction. Should the Court not grant dismissal, Defendants alternatively seek to compel arbitration.

## LEGAL STANDARD

Generally, "when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint." *Madara v. Hall*, 916 F.2d 1510, 1514 n.1 (11th Cir. 1990). If exercising personal jurisdiction is improper in the forum, the district court should end its analysis rather than reach the merits. *Marsalis v. STM Reader, LLC*, 806 F. App'x 748, 752–53 (11th Cir. 2020) (citing *Madara*). Nor need the merits be reached when contemplating dismissals for *forum non conveniens*. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) ("[A] *forum non conveniens* dismissal denies audience to a case on the merits.").

A dismissal for either lack of personal jurisdiction or *forum non conveniens* pertaining to a forum selection clause is without prejudice. *See Madara*, 916 F.3d at 1514 (personal jurisdiction); *Lightning Partners, Inc. v. SPS Commerce, Inc.*, No. 3:21-cv-399-TJC-PDB, 2022 WL 485228, at *4 (M.D. Fla. Feb. 17, 2022) (*forum non conveniens* doctrine). The court may consider a dismissal based on a forum selection clause before the issue of personal jurisdiction. *See Sinochem*

*Int'l,* 549 U.S. at 432; *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd.*, 722 F. App'x 870, 887 (11th Cir. 2018) (unpublished).[7]

## DISCUSSION

The Court first addresses the forum selection clause in the Agreement.  Here, the clause is found in a " clickwrap" agreement, which is typically a valid and enforceable contract.  *See Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (citing, among other cases, *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1162–63 (E.D. Cal. 2003)).

### Forum Selection Clause/Doctrine of *Forum Non Conveniens*

The plaintiff's "venue privilege" is extinguished when the parties have agreed to litigate in a particular forum.  *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W.D. Tex.*, 571 U.S. 49, 63 (2013).  A forum selection clause is "presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (listing four factors to consider for invalidation).

The doctrine of *forum non conveniens* applies to the enforcement of a valid forum selection clause.  *Atl. Marine Constr. Co.*, 571 U.S. at 60.  If the clause is

---

[7] *See also Schrenkel v. Lendus, LLC*, No. 2:18-cv-382-FtM-29CM, 2018 WL 5619358, at *8 n.7 (M.D. Fla. Oct. 30, 2018) (citing *Sinochem*).

valid, the "calculus changes" for the typical balancing factors. *Id*. at 63; *GDC Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028–29 (11th Cir. 2014) (quoting *Atl. Marine*). The court may consider only public, as opposed to private, interest factors, and the forum selection clause "should control except in unusual cases." *Alt. Marine Constr. Co.*, 571 U.S. at 63–4; *GDC Acquisitions*, 749 F.3d at 1028–29 (quoting *Atl. Marine*).

Plaintiffs attached to their complaint the Agreement containing the forum selection clause. The clause states that "all claims arising out of or relating to these Terms will be brought exclusively in the federal or state courts of San Jose, California." Plaintiffs do not argue that the Agreement was induced by fraud or overreaching or any other factor to invalidate the clause. *See Krenkel*, 579 F.3d at 1281 (considerations for invalidation). Rather, Plaintiffs challenge the authenticity of the Agreement because the dates on their *own* attachment are incorrect. Plaintiffs assert they conducted business on the Platform prior to the dates shown on the Agreement and therefore did not "affirmatively agree" to its terms and conditions.

Each side provides affidavits, which may be considered when deciding whether forum selection and arbitration clauses are valid. *See*, *e.g.*, *Derriman v. Mizzen & Main LLC*, 710 F. Supp. 3d 1129, 1135 (M.D. Fla. 2023). Both Teresa Martinez as the owner of Divine Serenity and Alessia Resta as owner of Apartment

Botanist aver that neither "affirmatively agreed" to the Agreement.  Dkt. 27 at 11, 21.  They also deny seeing a screen with a "click to agree" button when they became sellers.  Dkt. 27 at 11, 21.  Ms. Martinez became a seller in January 2024, and Ms. Resta became a seller in late September 2023.  Dkt. 27 at 10–11, 20–21.  Plaintiffs claim the Agreement they attached to the complaint must not be the one they agreed to because it shows the later date of July 2024.  Dkt. 27 at 10–11, 20–21.

Defendant Chen Li as the CEO of Defendant Palmstreet avers that "Palmstreet's terms were in place since Plaintiffs joined Palmstreet" and in September 2023, "Palmstreet implemented a logic that required each of its sellers to affirmatively click to agree to Palmstreet's terms and conditions before scheduling their first live show."  Dkt. 31-3 ¶¶ 5–7.  In early 2024, Palmstreet implemented the same logic every time Palmstreet revised those terms.  Dkt. 31-3 ¶ 9.  The versions of the Agreement that Plaintiffs agreed to are attached to the Li affidavit.  Dkt. 31-3 ¶ 5 & at 8–80.  Mr. Li avers that both Divine Serenity and Apartment Botanist affirmatively clicked to agree to the terms, which contained the forum selection and arbitration clauses.  Dkt. 31-3 ¶¶ 12–15.  The data, which was provided by Palmstreet, is attached to Plaintiffs' own  response.  Dkt. 31-3 ¶ 13; Dkt. 27 at 28–31 (data).

Any disputed material facts in the affidavits do "not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Derriman*, 710 F. Supp. 3d at 1134 (citation omitted).  This Court must determine whether it has the power to hear a case.  *Id*. at 1135.  Clickwrap or "browsewrap" agreements are enforceable when conspicuous and when the party had actual or constructive notice that affirmatively acknowledging the terms, such as by clicking a button, represents consent to the terms simply by using the website.  *See*, *e.g.*, *Falcon TelevisaUnivision Digital, Inc.*, No. 8:23-cv-2340-TPB-UAM, 2024 WL 1492831, at *3 (M.D. Fla. Mar. 29, 2024); *Masry v. Lowe's Cos., Inc.*, No. 24-cv-750-CRB, 2024 WL 3228086, at *6 (N.D. Cal. June 28, 2024).  In September 2023 and January 2024, the terms contained forum selection and arbitration clauses, and sellers were required to click through the page linking to the terms or agreement to be permitted to use the Platform.[8]  Dkt. 31-3 ¶¶ 4, 7 & at 9–32.  Any subsequent change in terms required clicking to agree to the revised terms.  Dkt. 31-3 ¶ 9.

---

[8]

> By utilizing any of our Services, including by browsing one of our websites, you agree to the Terms, if you do not accept the Terms, you are not permitted to use our services. . . . A. Governing Law. The Terms shall be governed by the laws of the State of California . . . B. Arbitration. You and Plant Story agree that any dispute or claim arising out of or relating to the Terms shall be finally resolved by final and binding arbitration  . . . D. Forum. We are based in California, so any legal action relating to our Services must be brought in San Jose, California. . . . you and Plant Story agree to submit to the personal jurisdiction of a state or federal court in San Jose, California for any disputes that are not subject to arbitration or mediation."

Dkt. 31-3 at 9, 16, 21, 28.  In any event, each time the terms were revised, sellers were required to click to agree to the revised terms.  Dkt. 31-3 ¶ 9.

The Court finds that when Plaintiffs became sellers on Palmstreet (formerly Plant Story), they agreed to the terms by using Palmstreet's services.  That Plaintiffs deny they "affirmatively agreed" to the terms of the forum selection and arbitration clauses and deny that they saw or clicked on a screen to accept the terms is belied by the Agreement attached to their own complaint and by prior and subsequent terms of service provided by Palmstreet.  A valid forum selection clause requires dismissal under the doctrine of *forum non conveniens* as a means of enforcing same.  *See*, *e.g.*, *Cleveland v. Kerzner Int'l Resorts, Inc.*, 657 F. App'x 924, 927 (11th Cir. 2016) (affirming dismissal on *forum non conveniens* grounds where valid forum selection clause existed); *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 967 (11th Cir. 2014) (same); *Lightning Partners, Inc.*, 2022 WL 485228, at *4 (same).

There is no adequate alternative forum, and there are no public interest factors that weigh in favor of dismissal.  The public does not have a strong interest in Florida deciding this case, the commerce affected by the parties is not limited to Florida, and court congestion, particularly in this Middle District, weighs in favor of this case being resolved by the state or federal courts of San Jose, California.

Finally, Plaintiffs summarily assert that the clauses, even if valid and enforceable, are inapplicable because their claims arise independently of tortious interference, misappropriation of trade secrets, and unfair competition.  The Court

12

disagrees.  The nine counts brought against these three Defendants all arise from

Plaintiffs' use of, and alleged damage by, Palmstreet's online shopping Platform.

Thus, the forum selection clause applies to the causes of action alleged in this case.

**Personal Jurisdiction**

To establish personal jurisdiction over a nonresident defendant, the plaintiff

must present a *prima facie* case by alleging sufficient facts in the complaint.  *Louis*

*Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citing

*United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).  When the

defendant submits affidavits contrary to the allegations in the complaint, the

burden does not shift back to the plaintiff if those affidavits "contain only

conclusory assertions that the defendant is not subject to jurisdiction."  *Louis*

*Vuitton Malletier*, 736 F.3d at 1350 (quoting *Stubbs v. Wyndham Nassau Resort &*

*Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006)).  If the "complaint

and supporting evidence conflict with the defendant's affidavits, the court must

construe all reasonable inferences in favor of plaintiff."  *Meier ex rel. Meier v. Sun*

*Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (citing *Madara*).

Plaintiffs invoke this court's federal question (subject matter) jurisdiction, 28

U.S.C. § 1331, by asserting claims under the Lanham Act and federal antitrust

laws, in addition to supplemental jurisdiction over the state law claims, 28 U.S.C. §

1367(a).[9]  Dkt. 1 ¶ 2.  Establishing personal jurisdiction over nonresident

defendants, however, is another matter.  Where federal statutes are silent regarding

service of process, the court looks first to the state long-arm statute to determine

whether it may exercise personal jurisdiction over a nonresident defendant.

*Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996);

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir.

1990).

If the state long-arm statute is satisfied, the court addresses due process

concerns requiring sufficient "minimum contacts" between the defendant and the

forum state such that exercising personal jurisdiction would not "offend traditional

notions of fair play and substantial justice" under the Due Process Clause of the

Fourteenth Amendment.  *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d

1247, 1249 (11th Cir. 2000) (citing *Sculptchair, Inc.*, 94 F.3d at 626, 630–31 and

quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  A three-prong

test for due process requires the court consider: (1) whether the claims "arise out of

or relate to" at least one of the defendant's contacts with the forum; (2) whether the

defendant "purposely availed" herself of the privilege of conducting activities

within the forum state; and (3) whether exercising personal jurisdiction would not

offend "traditional notions of fair play and substantial justice."  *Louis Vuitton*

---

[9] Plaintiff does not assert diversity jurisdiction.

*Malletier*, 736 F.3d at 1355 (citations omitted); *Future Tech.*, 218 F.3d at 1250

(listing three prongs).  Because federal due process "is not built into Florida's long-

arm statute and is more restrictive," the due process analysis must also be

conducted if the long-arm statute is satisfied.  *See Worman v. Golden Cattle City,*

*Inc.*, No. 8:22-cv-2891-SCB-MRM, 2023 WL 10404993, at *2 (M.D. Fla. Mar. 8,

2023) (citing *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010)).[10]

Both federal acts (Counts V and VII) are silent regarding service of process.

Thus, the Court must determine whether personal jurisdiction exists under

Florida's long-arm statute.

**Florida's Long-Arm Statute**

Under the Florida long-arm statute, personal jurisdiction may be either

specific or general.  *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d

802, 808 (11th Cir. 2010).  In each circumstance, the court must necessarily

determine if the complaint states a cause of action.  *PVC Windoors, Inc.*, 598 F.3d

at 808 & n.9 (citing Florida law).  The two federal claims will be addressed first

---

[10] After the Florida Supreme Court answered the question certified in *Marshall*, the Eleventh
Circuit reversed the district court's dismissal for lack of personal jurisdiction. *Internet Sols.
Corp. v. Marshall*, 611 F.3d 1368 (11th Cir. 2010).  In Florida, if a nonresident defendant
commits a tort such as defamation or trade libel by "posting allegedly defamatory material about
[the plaintiff] that was accessible in Florida when the material *was then accessed and thus
published in Florida*," the nonresident defendant is subject to the long-arm statute. *Id.* at 1370.
(emphasis added).  In *Marshall*, the defamatory material posted on a website was both accessible
in Florida and was, in fact, accessed by several Florida residents. *Id.* at 1370.

because they provide the sole basis for original subject matter jurisdiction.[11]  *See, e.g.*, *Kaufman, Englett & Lynd, PLLC v. Better Bus. Bureau of Cent. Fla., Inc.*, No. 6:12-cv-31-Orl-28KRS, 2013 WL 524931, at *6 (M.D. Fla. Feb. 13, 2013) (dismissing for lack of personal jurisdiction based on complaint's failure to state a claim under Lanham Act).

### General Jurisdiction

Palmstreet is a Delaware corporation registered to do business in California. Chen Li, its CEO, is domiciled in California.  Danielle Ciccoli is domiciled in Ohio.  To establish general long-arm jurisdiction, the plaintiff must show that a nonresident defendant is "engaged in substantial and not isolated activity" in the state.  § 48.193(2), Fla. Stat.  The complaint here simply states that these three Defendants (and every other Defendant) "conduct business in the State of Florida." Dkt. 1 ¶¶ 7–12.  This statement, without more, does not establish "continuous and systematic general business contact" in Florida.  *See Gazelles FL, Inc. v. Cupp*, No. 6:18-cv-544-Orl-22KRS, 2018 WL 7364591, at *5 (M.D. Fla. Sept. 26, 2018) (quoting *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA

---

[11] The court may decline to exercise supplemental jurisdiction over the state law claims if federal question jurisdiction no longer exists.  28 U.S.C. § 1367(c)(3); *Stalley v. Cumbie*, 586 F. Supp. 3d 1211, 1248–49 (M.D. Fla. 2022) (declining to exercise supplemental jurisdiction over state law claims based on same facts as federal claims, once federal claims have been dismissed).

1999)).  Consequently, general jurisdiction is neither pleaded nor supported by any

additional submissions.

### Specific Jurisdiction

Under specific long-arm jurisdiction, the claim must arise from or relate to

the individual defendant's activity within Florida.  § 48.193(1)(a), Fla. Stat.; *Louis*

*Vuitton Malletier*, 736 F.3d at 1352.  Of the nine enumerated acts subjecting a

nonresident to specific personal jurisdiction, Plaintiffs argue only two: engaging in

a business; and committing a tortious act.  § 48.193(1)(a)1. ("engaging in, . . .a

business in this state"); 2. ("[c]omitting a tortious act within this state").

Plaintiffs do not address the tortious conduct in the context of the two

federal claims, although this Court must.  *See Kaufman*, 2013 WL 524931, at *6

(requiring court to decide personal jurisdiction on bases providing for subject

matter jurisdiction).  The long-arm statute extends to tortious acts committed

outside the state if the acts cause injury in Florida.  *Posner v. Essex Ins. Co., Ltd.*,

178 F.3d 1209, 1217 (11th Cir. 1999).  The first step is determining whether the

allegations make out a *prima facie* case of jurisdiction.  *See, e.g.*, *Posner*, 178 F.3d

at 1214.

In the Eleventh Circuit, a Lanham Act claim is considered a "tortious act"

for purposes of personal jurisdiction under Florida's long-arm statute.  *See Louis*

*Vuitton Malletier*, 736 F.3d at 1353.  Count V does not allege a trademark

infringement, but rather false designation and misrepresentation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Dkt. 1 ¶¶ 2, 174.  There are no factual, or conclusory, allegations that tie the conduct of Palmstreet, Li, or Ciccoli in California to Plaintiffs' injury in Florida.  Count V alleges that other Defendants acted "in concert with Palmstreet and Danielle Ciccoli" and with the "full knowledge, encouragement, and support of Palmstreet and Danielle Ciccoli." Dkt. 1 ¶¶ 175, 178,  The only other references to Palmstreet name it as the marketing platform upon which the live sales occurred.  Dkt. 1 ¶¶ 186, 187.

As noted by Defendants, Plaintiffs remain silent and do not contest the lack of personal jurisdiction over Palmstreet.  With respect to Ms. Ciccoli, Plaintiffs assert that she personally participated in misappropriation of proprietary business strategies and in facilitation of unfair competition.  Dkt. 27 at 4–5.  As to Chen Li, Plaintiffs argue that personal jurisdiction has attached because he used his "personal UPS account to ship products sold through the Palmstreet Platform" and these acts were therefore purposefully directed at Florida businesses under section 48.193(1)(a) pertaining to operating a business in the state.  Dkt. 27 at 4.

Plaintiff alleges, however, that "Danielle Ciccoli acted within the scope of her employment when she engaged in the harmful actions" set forth in the complaint.  Dkt. 1 ¶ 115.  It is well-settled that an individual is not subject to personal jurisdiction by virtue of his or her position in the company.  *Doe v.*

18

*Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993) (citing *Bloom v. A.H. Pond Co., Inc.*, 519 F. Supp. 1162, 1170–71 (S.D. Fla. 1981)).  Plaintiffs cannot now assert a contrary position—one they have not alleged—that she was acting on her own accord.  Dkt. 27 at 4–5.  As aptly stated in *Bloom*:

> While the corporation itself may be properly amenable to service when it transacts business through agents operating in the forum state, unless the agents transact business on their own account and not on behalf of the corporation, the agents are not engaged in business so as to sustain an application of the long-arm statute to them as individuals.  If the law were otherwise, any corporate employee could be forced to defend a suit in the Florida courts, regardless of what the individual did with respect to his employer's business in this state.

519 F. Supp. at 1170–71.  Plaintiffs have neither alleged nor demonstrated personal jurisdiction over Palmstreet, Li, or Ciccoli.

Having determined that Florida's long-arm statute has not been satisfied, the Court need not address the three-pronged due process test.  *Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545 (11th Cir. 2019) (citing *Mazer*, 556 F.3d at 1274 n.15; *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1319 (11th Cir. 2006)).  Yet even assuming Count V adequately alleges personal jurisdiction over these three Defendants, the Court finds due process has not been met.  For intentional torts,  the defendant's contacts must be directly aimed at the forum and cause injury within the forum that "the defendant should have reasonably anticipated."  *See Argos Global Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1090–91 (S.D. Fla. 2020) (citations omitted) (finding personal jurisdiction did not comport with due process).  There

has been no showing that the livestream events held in a warehouse in California specifically targeted Florida customers.  *See Uniters N. Am., LLC v. Serveco Int'l, Inc.*, No. 8:21-cv-2381-CEH-AAS, 2022 WL 4464846 (M.D. Fla. Sept. 26, 2022). Even if Florida consumers bought crystals on the Palmstreet app, Palmstreet did not target Florida consumers, and any particular sales have not been adequately tied to any false representations made in California.

## CONCLUSION

Defendants Palmstreet, Chen Li, and Danielle Ciccoli's motion to dismiss (Dkt. 18) is granted without prejudice and without leave to amend.  Plaintiffs' claims will not be brought again in this jurisdiction based on the valid and enforceable forum selection clause.  Plaintiffs may want to reassert any claims in the proper forum under the binding forum selection clause.

**DONE AND ORDERED** at Tampa, Florida, on May 12, 2025.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

COPIES FURNISHED TO:
Counsel of record and unrepresented parties