UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DIVINE SERENITY SHOP, INC, and MADE WITH LASER, LLC *d/b/a* Apartment Botanist,

Plaintiffs,

v. Case No: 8:24-cv-02081-JLB-LSG

PLANT IDENTIFICATION, INC., *d/b/a* Palmstreet f/k/a Plantstory; CHEN LI; DANIELLE CICCOLI; KATHY BANEGAS *d/b/a* The Healing Gem; BREANNA PALACIOZ *d/b/a* Crystal Vibrations; and XIAOHONG HOLLY SONG *d/b/a* The Crystal Tabby,

Defendants.
_____________________________________/

**ORDER**

Before the Court is Divine Serenity Shop, Inc.'s ("Divine Serenity") and Made With Laser, LLC's *d/b/a* Apartment Botanist ("Plaintiffs'") Amended Complaint. (Doc. 66). Defendant Kathy Banegas's *d/b/a* The Healing Gem, and Defendant Xiaohong Song's *d/b/a* The Crystal Tabby, each filed motions to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. (Doc. 80; Doc. 111). Upon careful review, the Court **GRANTS** the motions to dismiss.

**BACKGROUND**

Plaintiffs and Defendants market and sell crystals, gems, plants, and other similar products. Plaintiff Divine Serenity is a Florida corporation conducting business in Florida. (Doc. 66 at ¶ 1). Plaintiff Apartment Botanist is a New Jersey

limited liability company conducting significant business in Florida. (*Id.* at ¶ 2). Defendants Song and Banegas are California residents who each operate a small business—The Crystal Tabby and The Healing Gem—in California. (*Id.* at ¶¶ 3, 5). Plaintiffs allege that Defendants Song and Banegas both conduct business in Florida. (*Id.*).

Plaintiffs and Defendants sell their products on the Palmstreet platform, an e-commerce shopping application or "app." (*Id.* at ¶¶ 1–3, 5). Plaintiffs allege that Defendants targeted Florida consumers through Palmstreet and other means, offering products at wholesale prices despite not being a licensed reseller in Florida. (*Id.* at ¶¶ 9–14). Specifically, Plaintiffs allege that Defendants used Palmstreet to target Florida consumers and undercut Florida resellers such as Plaintiffs. (*Id.* at ¶ 10). In doing so, Plaintiffs allege that Defendants conducted livestreams during Eastern Standard Time ("EST") to target Floridians, redirected consumers to other third-party apps such as Instagram, Zelle, Venmo, and PayPal to take Florida customers away from Plaintiffs' selling efforts and avoid Florida's resale license requirement, and participated in a scheme with a Palmstreet employee to collect data on Plaintiffs' consumers. (*See id.* at ¶¶ 9–13).

As a result of Defendants' targeting Florida consumers to sell similar products as Plaintiffs for a lower price, Plaintiffs allege they have suffered significant damage. (*Id.* at ¶¶ 34–41). Accordingly, Plaintiffs filed this lawsuit on August 31, 2024, bringing claims for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), tortious interference with business relationships,

civil conspiracy, and unjust enrichment against Defendants Song and Banegas. (Doc. 1 at 32–36, 41–47, 61–67). Defendant Banegas moved to dismiss Plaintiffs' Complaint shortly thereafter for lack of personal jurisdiction. (Doc. 9). The Court granted the motion and provided Plaintiffs leave to amend. (Doc. 52). Plaintiffs filed their Amended Complaint, again bringing the above-mentioned claims against Defendants and adding a claim for injunctive relief. (Doc. 66 at 9–13). Both Song and Banegas filed motions to dismiss the Amended Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim. (Doc. 80; Doc. 111). Plaintiffs responded, arguing that this Court has specific personal jurisdiction over Defendants. (Doc. 85; Doc. 113).

**LEGAL STANDARD**

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "When a defendant challenges personal jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (internal quotation marks omitted). If "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction," however, the burden does not shift back to the plaintiff. *Id.* (quoting *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir.

2006)). Where the complaint and supporting documents conflict with a defendant's affidavits, the court "must construe all reasonable inferences in favor of the plaintiff." *Stubbs*, 447 F.3d at 1360.

To avoid dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though a complaint attacked under Federal Rule of Civil Procedure 12(b)(6) "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). Thus, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

Defendants move to dismiss the Amended Complaint for lack of personal jurisdiction. (Docs. 80, 111). In resolving personal jurisdiction, courts consider: "(1) whether personal jurisdiction exists over the nonresident [defendants] under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S.

Constitution." *Louis Vuitton Malletier*, 736 F.3d at 1350.

As an initial matter, it is axiomatic that "Florida's long-arm statute is to be strictly construed." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996). "The reach of Florida's long-arm statute 'is a question of Florida law,' and this Court is required to apply the statute 'as would the Florida Supreme Court.'" *Louis Vuitton Malletier*, 736 F.3d at 1352 (quoting *United Techs.*, 556 F.3d at 1274). "[A]bsent some indication that the Florida Supreme Court would hold otherwise," the Court is "bound to adhere to the interpretations of Florida's long-arm statute offered by Florida's District Courts of Appeal." *Id.*

That said, under Florida's long-arm statute, personal jurisdiction may be either general or specific. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010). Florida's long-arm statute enumerates nine acts subjecting a nonresident to personal jurisdiction. *See* Fla. Stat. § 48.193. Plaintiffs argue that specific personal jurisdiction is applicable here. (*See* Doc. 66 at ¶¶ 8–15). Florida's long-arm statute states the following in relevant part:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> * * *
>
> (2) Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(a)(2).

"[I]n order to 'commit a tortious act' in Florida, a defendant's physical presence is not required." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). A defendant can commit a tortious act "through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications." *Id.* Still, "[t]he threshold question that must be determined is whether the allegations of the complaint state a cause of action." *Id.* "If the complaint does state a cause of action, then it must be determined whether the alleged cause of action arises from these communications." *Id.* In light of the foregoing, the Court first evaluates Plaintiffs' Amended Complaint under Rule 12(b)(6).

**I. Failure to State a Claim.**

Plaintiff's Amended Complaint brings five claims: (1) violation of FDUTPA; (2) tortious interference with business relationships; (3) civil conspiracy; (4) unjust enrichment; and (5) injunctive relief. (Doc. 66).

**A. Florida's Deceptive and Unfair Trade Practices Act.**

"To assert a claim under FDUTPA, a plaintiff must allege (1) a deceptive or unfair act in the conduct of trade or commerce; (2) causation; and (3) actual damages." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023).

As a preliminary matter, the Court notes that Plaintiffs seek actual damages, for "lost revenue, reputational damage, and diminished goodwill among Florida customers." (Doc. 66 at ¶ 49). "Florida courts consider actual damages . . . to be a 'term of art,'" that "do[es] not include consequential damages." *Diversified Mgmt.*

*Sols., Inc. v. Control Sys. Rsch., Inc.*, No. 15-81062-CIV, 2016 WL 4256916, at *5 (S.D. Fla. May 16, 2016) (quoting *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985) and *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008)). And "harm in the manner of competitive harm, diverted or lost sales, and harm to the goodwill and reputation of [plaintiff] [are] consequential damages." *Krupa v. Platinum Plus, LLC*, No. 8:16-cv-3189-T-33MAP, 2017 WL 1050222, at *7 (M.D. Fla. Mar. 20, 2017) (first alteration in original) (citation modified) (citing, *inter alia*, *Rollins, Inc. v. Butland*, 951 So. 2d 860, 870 (Fla. 2d DCA 2006)).

However, Plaintiffs also seek injunctive relief, "which is available under FDUTPA in the absence of actual damages." (Doc. 66 at ¶ 50); *Feld Motor Sports, Inc. v. Mattel, Inc.*, No. 8:18-cv-3092-T-30AAS, 2019 WL 5593281, at *3 (M.D. Fla. May 8, 2019) (citing Fla. Stat. § 501.211(1)).[1]

To establish a FDUTPA violation, Plaintiffs must show that Defendants engaged in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla.

---

[1] FDUTPA provides injunctive relief for "anyone aggrieved by a violation of" the statute as follows:

> (1) Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

Fla. Stat. § 501.211(1).

Stat. § 501.204(1). Courts must construe the FDUTPA liberally to protect "legitimate business enterprises from those who engage" in these practices. Fla. Stat. § 501.202. "Therefore, when considering whether a defendant's actions support a finding of 'unfair methods of competition, unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce,' courts have regarded the concept as extremely broad." *MJS Music Publications, LLC v. Hal Leonard Corp*, No. 806CV488T30EAJ, 2006 WL 1208015, at *2 (M.D. Fla. May 4, 2006) (citation modified); *Hugh's Concrete & Masonry Co. v. Se. Pers. Leasing, Inc.*, No. 8:12-CV-2631-T-17AEP, 2013 WL 2709083, at *3 (M.D. Fla. June 11, 2013) (same).

Here, Plaintiffs allege that Defendants engaged in "deceptive or unfair" practices by conducting live sales on the Palmstreet platform to redirect Plaintiffs' customers from Palmstreet to other platforms and receive payments through other third-party apps to avoid Florida's sales tax and circumvent Florida regulations. (Doc. 66 at ¶ 46). Taking the allegations in the Amended Complaint as true and construing the FDUTPA liberally, Plaintiffs have satisfied the first element.

To successfully plead a FDUTPA claim, however, Plaintiffs must also sufficiently allege that the unfair practices caused the alleged harm. The causation "must be direct, rather than remote or speculative." *Pop v. LuliFama.com LLC*, No. 8:22-cv-2698-VMC-JSS, 2024 WL 1194485, at *4 (M.D. Fla. Mar. 20, 2024), *aff'd*, 145 F.4th 1285 (11th Cir. 2025) (quoting *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 213 (Fla. 4th DCA 2019)). Here, Plaintiffs allege that Defendants

created "unfair competition against verified Florida sellers, such as Plaintiffs." (Doc. 66 at ¶ 47). Even taking this allegation as true, whether Defendants' redirecting customers from Palmstreet to a third-party app actually affected Plaintiffs is speculative.

Indeed, despite being granted leave to amend their complaint, Plaintiffs still make no allegation that customers who purchased goods from Defendants would have purchased from Plaintiffs but for the allegedly deceptive practices. Thus, even assuming all facts as true in Plaintiffs' Amended Complaint, whether such unfair competition affected Plaintiffs is speculative at best. Accordingly, Plaintiffs have failed to state a substantive or declaratory relief claim under the FDUTPA. *See* Fla. Stat. § 501.211(1) (FDUTPA statute plainly and unambiguously stating that only an "aggrieved" person under FDUTPA may sustain a declaratory relief claim); *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 173 (Fla. 1st DCA 2015) (holding that to be "aggrieved," the "adverse interest may be shared in common with other members of the community at large but must exceed in degree the general interest in community good shared by all persons"); *Superior Consulting Servs., Inc. v. Shaklee Corp.*, No. 6:16-cv-2001-ORL-31GJK, 2017 WL 2834783, at *7 (M.D. Fla. June 30, 2017) (A party is "aggrieved" when the allegedly deceptive conduct "has caused a non-speculative injury that has affected the plaintiff beyond a general interest in curbing" the conduct); *see, e.g.*, *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1191–92 (M.D. Fla. 2022) (finding a party was aggrieved where it had "non-speculative" injuries "beyond a general interest in curbing deceptive or unfair

conduct" because it alleged out-of-pocket expenses dealing with a data breach, time spent on prevention, and substantially increased risk of fraud and identity theft).

**B. Tortious Interference with Business Relationships.**

Under Florida law, "[t]he elements of tortious interference with a business relationship are (1) the existence of a business relationship[;] (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1279 (11th Cir. 2015) (internal quotation marks omitted) (alterations in original) (quoting *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)).

Plaintiffs have not satisfied the requisite business relationship to properly plead a tortious interference with a business relationship claim under Florida law. The Amended Complaint alleges that Plaintiffs "maintained ongoing, advantageous business relationships with Florida-based buyers and repeat customers through the Palmstreet platform." (Doc. 66 at ¶ 52). While Florida law allows plaintiffs to "bring a cause of action alleging tortious interference with present or prospective customers," it does not allow a tortious interference claim "with a business's relationship to the community at large." *Ethan Allen*, 647 So. 2d at 815. Generally, the business relationship must be "evidenced by an actual and identifiable understanding or agreement which *in all probability would have been completed* if the defendant had not interfered." *Id.* (emphasis added). Plaintiffs point to no

identifiable understanding between themselves and Florida-based customers with which Defendants interfered. *See id.* (holding that, because the appellee "had no identifiable agreement with its past customers that they would return" to his business, he could not demonstrate tortious interference with a business relationship because "[t]he mere hope the some of its past customers may choose to buy against cannot be the basis for a tortitous interference claim"); *see also Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1301–02 (M.D. Fla. 2017) (finding plaintiff failed to adequately allege the existence of a business relationship where plaintiff "fail[ed] to identify any current or prospective consumer with whom [it] has an actual and identifiable understanding regarding the sale and purchase of [the goods]" (internal quotation marks omitted)). Accordingly, Plaintiffs have failed to state a claim for tortious interference with a business relationship.

**C. Unjust Enrichment.**

"A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)).

In support of the conferral of a benefit, Plaintiffs allege that they invested resources in cultivating customer relationships with Florida-based Palmstreet users and Defendants used those relationships to sell similar products at wholesale

prices. (Doc. 66 at ¶¶ 69–70). Such a benefit, if any, is too indirect to support a finding of unjust enrichment.

Specifically, Florida law requires the benefit conferred to be passed directly to the defendant. This does not require direct contact, but it does require that the defendant directly benefit—even if the benefit went first through an intermediary. *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013) (collecting cases). Examples of this include a manufacturer selling its product through an intermediary rather than selling directly to consumers, and companies receiving commissions from insurance premiums paid by consumers. *Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007); *Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011). In other words, there must be some identifiable flow of benefit from the plaintiff to the defendant. Taking Plaintiffs' allegations as true, merely building a customer base that later buys from a competitor does not constitute conferral of a benefit. If that were the case, any established business with a customer base could bring an unjust enrichment claim against a new, competing business.

In any case, Plaintiffs have failed to allege that Defendants voluntarily accepted and retained any benefits. In a conclusory fashion, Plaintiffs allege that "Defendants knowingly and voluntarily accepted the benefits of this misappropriated market access and derived profits from the redirection of Florida consumers." (Doc. 66 at ¶ 71). While the Amended Complaint alleges that

Defendants targeted Florida customers, whom Plaintiffs also sell to, it does not allege that Defendants knew that Plaintiffs cultivated a customer base useful to themselves and targeted Plaintiffs' customers. (*Id.* at ¶¶ 28, 38). Accordingly, Plaintiffs have failed to state a claim for unjust enrichment. *See Citicorp Real Est., Inc. v. Buchbinder & Elegant, P.A.*, 503 So. 2d 385, 387 (Fla. 3d DCA 1987) ("[N]ot every person who may ultimately benefit from [another] thereby becomes responsible to pay for [that benefit] . . . . [O]nly when it can be fairly said that the benefiting party has knowingly and voluntarily accepted the benefits" are they unjustly enriched); *Flatirons Bank v. Alan W. Steinberg Ltd. P'ship*, 233 So. 3d 1207, 1212 (Fla. 3d DCA 2017) (holding that the appellee "had no knowledge that the sums it received . . . originated from [appellant]" and, therefore, appellant did not establish that any conferral of benefit was knowing and voluntary).

**D. Civil Conspiracy.**

Under Florida law, "an actionable conspiracy requires an actionable underlying tort or wrong." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1339 (11th Cir. 2014) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)). Thus, a cause of action for civil conspiracy exists only if "the basis for the conspiracy is an independent wrong or tort which would constitute a cause of action if the wrong were done by one person." *Id.* Because Plaintiffs have failed to adequately allege an underlying tort, this claim also fails.

**E. Injunctive Relief.**

"[A]n injunction is not a cause of action but a remedy." *Pierson v. Orlando*

*Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1288 (M.D. Fla. 2009), *aff'd*, 451 F. App'x 862 (11th Cir. 2012). Accordingly, Plaintiffs cannot state a claim for injunctive relief under Federal Rule of Civil Procedure 65. (*See* Doc. 66 at 13).

**II. Whether personal jurisdiction exists over Defendants.**

Even if Plaintiffs' Amended Complaint stated a cause of action under Rule 12(b)(6), Plaintiffs cannot show that this Court has specific personal jurisdiction over Defendants.

Specific jurisdiction requires that the claim arise from or relate to the defendant's activity in Florida. Fla. Stat. § 48.193(1)(a); *Louis Vuitton Malletier*, 736 F.3d at 1352–53. As noted, Plaintiffs allege specific jurisdiction over Defendants through Florida's long-arm statute, invoking Fla. Stat. § 48.193(1)(a)(2)'s commission of a "tortious act within" Florida provision. *Id.* Accordingly, Plaintiffs must show that their claims arise from Defendants' committing a tortious act within Florida.

In arguing that this Court has specific personal jurisdiction, Plaintiffs allege that Defendants purposefully directed their activities at Florida residents and businesses. (Doc. 66 at ¶ 8). Specifically, they allege that Defendants used Palmstreet to have access to Florida consumers, targeted Florida sellers who had Florida consumers to undercut their businesses, engaged in off-platform selling using Florida consumer payment apps such as Zelle, Venmo, and PayPal, used live streams to redirect Florida buyers during peak Florida hours, and schemed with a Palmstreet employee to collect Plaintiffs' information on consumers that included

Floridians. (*Id.* at ¶¶ 8–14).

None of these allegations demonstrates that the Defendants were purposefully targeting Florida. "[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 112 (1987). "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.*; *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–98 (1980) ("It is not enough that, through distributors or other channels, Defendant's Vortex products might have found their way to Florida"). Though Plaintiffs allege that Defendants used Palmstreet to target Florida consumers, they also admit that Palmstreet is not exclusive to the Florida market. (*See* Doc. 66 at ¶ 1; *see also* Doc. 1 at ¶ 7). Also not exclusive to Florida are third-party payment apps such as Zelle, Venmo, and PayPal. And Plaintiffs do not demonstrate that the Instagram live streams were used to target Florida consumers. (*See* Doc. 66 at ¶¶ 11, 13). Indeed, Plaintiffs merely allege that the live streams catered to consumers in EST, which Florida observes. (*See id.* at ¶ 13; Doc. 85 at 3–4). Moreover, Plaintiffs' allegation that Defendants schemed with a Palmstreet employee to collect data on consumers that included Florida consumers suffers from the same insufficiency because Defendants did not specifically target Florida buyers. (*See id.* at ¶ 12).

As for Plaintiffs' allegation that Defendants targeted Florida sellers that have Florida-based customers, Plaintiffs rely on an email sent from The Crystal Tabby promoting its products and general updates. (Doc. 85 at 3, 10–47). Though "committing a tortious act" in Florida under section 48.193(1)(a)(2) can occur through defendant's "telephonic, electronic, or written communications into Florida, . . . an e-mail or telephone communication from out of state can support personal jurisdiction under the Florida long-arm statute ***only if the cause of action arises from the communications***." *Miller v. Berman*, 289 F. Supp. 2d 1327, 1333 (M.D. Fla. 2003) (emphasis added) (citing *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002)). Here, Plaintiffs' claims arise from the allegation that Defendants are using illegal tactics to target Florida consumers. (*See* Doc. 66). Thus, a defendant's emails to Plaintiff Divine Serenity Shop—a Florida *seller*—did not give rise to Plaintiffs' causes of action.

Further, Plaintiffs' attempt to support specific personal jurisdiction through Defendant Banegas's use of the Faire app, another e-commerce platform, *for the first time* in their responses to the motions to dismiss. (Doc. 85 at 3–6; Doc. 113 at 8). Plaintiffs argue that Banegas made sixty-four sales to Florida consumers through Faire. (Doc. 113 at 8). First, these are not direct sales from the seller to Florida buyers. Second, Plaintiff does not argue that Defendant Banegas utilized the Faire platform to target Florida consumers specifically. Again, merely placing their products in the stream of commerce (here, via Faire) does not show that they purposefully directed an act to Florida. *Asahi Metal Indus.*, 480 U.S. at 112;

*see J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) (finding no personal jurisdiction despite the defendant's use of a distributor in the United States and four of its products ending up in the forum State).

Plaintiffs also insist that Defendant Banegas is subject to personal jurisdiction in this Court because Defendant Banegas left reviews for products sold by The Crystal Coven, a Florida-based LLC. (*See* Doc. 85 at 3–4) (citing Doc. 66 at 63–64). This does not show that Defendant Banegas was targeting Florida consumers or advertising its products in any way. Also unpersuasive is Plaintiffs' contention that Defendant Banegas listed and sold products to four Florida-based consumers. (*Id.*) (citing Doc. 66 at 65–76). To provide a basis for jurisdiction, "the defendant's website must sell a significant quantity of goods to people in the forum." *Performance Indus. Mfg., Inc. v. Vortex Performance Pty Ltd.*, No. 8:18-cv-00510-T-02AAS, 2019 WL 78840, at *5 (M.D. Fla. Jan. 2, 2019) (internal quotation marks omitted) (citing *Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1126–27 (M.D. Fla. 2006) (finding no personal jurisdiction where plaintiff alleged only two sales to Florida residents)).

**CONCLUSION**

The Court finds that the Plaintiffs' Amended Complaint fails to state a cause of action and does not provide a basis for personal jurisdiction over Defendants Song or Banegas. In part because this case was transferred to the undersigned in the midst of the pleadings stage, the Court will provide leave to file a second amended complaint.

Accordingly, it is **ORDERED**:

1. Plaintiffs' Amended Complaint (Doc. 66) is **DISMISSED without prejudice**.
2. Defendant Banegas's Motion to Dismiss (Doc. 80) is **GRANTED**.
3. Defendant Song's Amended Motion to Dismiss (Doc. 111) is **GRANTED**.
4. Defendant Song's First Motion to Dismiss (Doc. 78) is **DENIED as moot**.
5. The Court will provide Plaintiffs leave to file a second amended complaint as to Counts I, II, III, and IV. Any second amended complaint must be filed within fourteen (14) days from the date of this Order. No new claims may be added.[2]

**ORDERED** in Tampa, Florida, on August 11, 2026.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

[2] The Court strongly recommends that the parties engage in meaningful settlement negotiations. After careful review of the course of this litigation and the relative merits of the claims presented, the Court will offer the parties the opportunity for a randomly selected U.S. Magistrate Judge in the Tampa Division to conduct a settlement conference at no cost to the parties. Given this Court's limited judicial resources, the Court respectfully requests that the parties accept this offer only if their respective attorneys have conferred and believe, in good faith, that an amicable settlement could be reasonably reached. Should the parties request a settlement conference, they must file a Joint Request for a Settlement Conference no later than 21 days from the date of this Order.